**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**VIBERT L. WHITE JR.,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　**Case No. 6:10-cv-134-Orl-28GJK**

**ALANA BRENNER, BILL COWLES,**
**DAISY W. LYNUM, and the CITY OF**
**ORLANDO,**

        **Defendants.**

_____

## ORDER

Vibert L. White Jr. ("Plaintiff") filed this action in January 2010 challenging the constitutionality of a provision of the City Charter of the City of Orlando, Florida pertaining to the qualification requirements for city commission candidates. The case is now before the Court on Plaintiff's Dispositive Motion for Summary Judgment (Doc. 36) and the Motion for Summary Final Judgment (Doc. 34) filed by Defendants Alana Brenner and the City of Orlando. Having considered the parties' submissions,[1] the Court concludes that Defendants' motion must be granted and that Plaintiff's motion must be denied.

### I. Background

In January 2010, Plaintiff attempted to qualify as a candidate for District 5 Orlando City Commissioner for the March 9, 2010 election. Materials pertaining to the election and

---

[1] The pertinent filings are: Defendants' Motion (Doc. 34); Plaintiff's Motion (Doc. 36); Defendants' Response (Doc. 43); Plaintiff's Response (Doc. 44); Defendants' Reply (Doc. 46); and Plaintiff's Reply (Doc. 47).

the qualification requirements therefor had been provided to Plaintiff's campaign in March and April 2009.  (Joint Pretrial Statement ("JPS"), Doc. 41, at 9).

The qualification requirements for City Commission candidates are set forth in Chapter 2, Section 1-1 of the City Charter ("Section 1-1") and in Section 21.06 of the City Code ("Section 21.06").  Section 1-1 provides in part:

> (b) Each candidate for a City of Orlando district Commissioner seat shall have been, at the time of qualifying, both a bona fide resident and registered elector of that district of the City of Orlando for at least one year prior to qualifying. . . .
>
> . . . .
>
> (d) At the time of qualifying, candidates shall be required to submit proof satisfactory to the City Clerk that they have met the requirements of this section.  If satisfactory proof is not submitted prior to the end of the qualifying period, the City Clerk shall not qualify that person for the office sought and their name shall not appear on the ballot. Satisfactory proof of having met the residency requirements of this section shall include submission [of][2] all of the following applicable items for the one-year period prior to qualifying:  homestead exemption documentation, residential property lease, utility bills which reflect usage of utilities at a level indicating actual residence, and Florida driver's license registration.  Candidates may also submit to the City Clerk any other documentation that shows their intention to be a bona fide resident at their qualifying address. Candidates must also submit documentation that they have been a registered elector as required by this section for the one-year period prior to qualifying.  As a condition of qualifying, all candidates must sign a release authorizing the City Clerk to verify the information that they have submitted.

---

[2]The word "of" is missing from this sentence of Section 1-1(d) in the copies of this provision that were submitted by Defendants (Attach. 1 to Brenner Aff.) and by Plaintiff (Attach. B to Doc. 38).  The parties do not appear to dispute, however, that "of" should appear at this point in this sentence, and the presence or absence of "of" is not at issue in this case. (See, e.g., Doc. 36 at 4 & n.2 (addition by Plaintiff of "of" in brackets in quotation of Section 1-1(d) with accompanying explanation)).

Orlando, Fla., Charter ch. 2, § 1-1(b), (d). The one-year residency requirement was added via an amendment approved by a vote of the citizens of Orlando in 2004.[3] (Amy Iennaco Aff., Ex. 2 to Doc. 34, ¶ 4). Section 21.06 provides:

> All candidates for office in municipal elections shall be registered and qualified electors of the City at the time of their qualifying as a candidate with the City Clerk. Candidates for office in such elections shall qualify with the City Clerk by filing application designating the office for which they are candidates and paying the qualifying fee provided for in Section 21.07. Such application shall be filed and the qualifying fee paid at any time after noon on the first day of the qualifying period, but no later than noon on the last day of the qualifying period. The qualifying period shall be set approximately sixty days before the general election with the exact dates established by resolution of City Council and published as part of the proclamation required by Section 21.08.

Orlando, Fla., Code § 21.06.

The qualifying period for the March 9, 2010 election began at 12:00 noon on January 11, 2010 and ended at 12:00 noon on January 15, 2010. (Alana Brenner Aff., Ex. 3 to Doc. 34, ¶ 9). On December 16, 2009, Defendant Alana Brenner—the City Clerk of the City of Orlando—notified Plaintiff in a letter that the records of the Orange County Supervisor of Elections indicated that he was not a registered voter in District 5 as of January 15, 2009[4]—one year prior to the end of the qualifying period. (JPS at 10; Letter, Attach. 3 to

---

[3] Prior to the amendment, the Charter required only that candidates reside within the City at the time of qualifying and that they be registered City voters. (Council Agenda Item, Attach. A to Iennaco Aff.).

[4] Brenner's December 16, 2009 letter (Attach. 3 to Brenner Aff.) indicated the relevant date as January 15, 2008 rather than January 15, 2009, but that appears to be a typographical error. The other documents in the record indicate the pertinent date as January 15, 2009—consistent with the requirement of one year prior to the close of the

Brenner Aff.). Plaintiff was advised that if he believed that information was incorrect, he was to "submit verification that [he meets] this requirement at the time of qualifying." (Attach. 3 to Brenner Aff.).

On January 13, 2010, Plaintiff presented documentation at the City Clerk's office to attempt to qualify. (Brenner Aff. ¶ 10). Specifically, Plaintiff presented: (1) a lease agreement between Plaintiff, as tenant, and Betty Jean Gelzer—the mother of Plaintiff's campaign treasurer—as landlord, dated December 1, 2008 and covering the period December 1, 2008-November 30, 2009 for property located at 825 W. Washington Street in Orlando; (2) utility bills for January 2009 to December 2009 at the Washington Street property; and (3) an affidavit in which Plaintiff declared that he had taken all necessary action to become a registered elector prior to January 2, 2009 but that because of a clerical error by the office of the Orange County Supervisor of Elections, the records of the Supervisor of Elections did not reflect that he had done so. (Id. ¶ 10).

While Plaintiff was at the City Clerk's office that day, he was asked to present his driver's license. (Id. ¶ 11). Plaintiff responded that he did not have his license with him at that time but would bring it in later. (Id.). That afternoon, Plaintiff returned to the office with a driver's license that indicated that it was a "Replacement License" issued that day with an address of 825 W. Washington Street. (Id.; Attach. 6 to Brenner Aff.). It is undisputed that as of January 12, 2010, Plaintiff's driver's license reflected an address on Tufts Court in

---

qualifying period on January 15, 2010. (See, e.g., January 14, 2010 letter, Attach. 10 to Brenner Aff.; January 7, 2010 letter from Brenner to the Supervisor of Elections, Attach. 4 to Brenner Aff.).

Orlando—the address of a home that Plaintiff owns in unincorporated Orange County, Florida that is not within the City of Orlando or District 5 thereof. (JPS at 9-10).

On January 14, 2010, Brenner notified Plaintiff of deficiencies in the documentation that he had submitted in support of qualifying and informed him that he could submit additional documentation by the 12:00 noon deadline the next day. (Id. at 10; Letter of Jan. 14, 2010, Attach. 10 to Brenner Aff.). In her letter to Plaintiff, Brenner quoted Section 1-1 and then stated:

> The documentation you have provided to date does not satisfy the requirements of the Charter provisions. You did not submit any documentation regarding homestead of property in the district. The lease you submitted does not cover the entire year prior to the qualifying period. The OUC bills you submitted do not show kilowatt hours and water usage supportive of actual residence.
> The Florida driver's license you submitted was dated yesterday and does not establish the required year of residency. It is my understanding that until yesterday, your license reflected an address on 7425 Tufts Court, which is not in the City of Orlando, but which the public records indicate that you own.
> The second requirement of the City Charter is that you must have been a registered elector of City District 5 since on or before January 15, 2009. Although you submitted an affidavit in that regard, the documentation shows only that you submitted an address change to the Supervisor of Elections on January 30, 2009. As I previously indicated to you in my letter of December 16, 2009, the Supervisor of Elections records do not reflect that you have been a registered elector of the District 5 for the required period. If you did not actually reside at the Washington Street home or elsewhere within the district since on or before January 15, 2009, as the record available to me seems to indicate as outlined above, you also would not meet this qualification requirement.

(Attach. 10 to Brenner Aff.).

In response to Brenner's January 14 letter, Plaintiff submitted one additional

document prior to the close of the qualifying period—a second lease for the 825 W. Washington Street property, covering the period December 1, 2009-November 30, 2010. (Brenner Aff. ¶ 17).  On January 15, 2010—the last day of the qualifying period—Brenner sent Plaintiff a letter acknowledging receipt of the second lease document but advising: "Unfortunately, you have not submitted satisfactory proof that you have met the eligibility requirements of the City of Orlando Charter and you will not be qualified as a candidate for City Commissioner, District 5."  (Letter of Jan. 15, 2010, Attach. 11 to Brenner Aff.).

Only one candidate—Defendant Daisy Lynum, the incumbent District 5 commissioner—was found to have met the qualification requirements in the City Charter. (JPS at 10).  Lynum began a new four-year term as District 5 city commissioner on May 1, 2010.  (Id.).

In the Amended Complaint (Doc. 25), Plaintiff alleges that "the requirements for candidate qualification in subsection 1-1(d) of Chapter 2 of the City Charter . . . are facially unconstitutional."[5]  (Doc. 25 at 8).  He asserts that subsection 1-1(d) requires candidates to produce homestead exemption documentation and that this "necessarily means that a candidate is required to own his own home," and amounts to an unconstitutional "freeholder" requirement.  (Id. at 7).[6]  Plaintiff asks this Court to declare subsection 1-1 unconstitutional

---

[5]Plaintiff vigorously maintains—despite having attempted to comply with the requirements of Section 1-1 and being denied qualification status—that he is **not** mounting an as-applied challenge to the provisions at issue.  (See, e.g., Doc. 32 at 1-2).

[6]In the Amended Complaint, Plaintiff also alleged (1) that section 1-1(d)'s "requirement of 'utility bills which reflect usage of utilities at a level indicating actual residence'" discriminates against African-American households in violation of the Voting Rights Act and the Fourteenth Amendment; and (2) that "[r]equiring a driver's license of candidates for

-6-

and strike it. (Id.). He further requests that this Court "mandatorily enjoin Brenner and the City to qualify [him] as a candidate for the position of District 5 City Commissioner and to further order Brenner to instruct [Defendant Bill Cowles, the Supervisor of Elections for Orange County], to place [Plaintiff's] name and the name of Lynum" on a ballot at either a future general election or a special election called for that purpose. (Id. at 8-9).[7]

## II. Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations," Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable

---

public office imposes a condition of employment unrelated to the actual performance of the functions of that office and effectively bars disabled persons such as blind persons from running for public office," in violation of the Americans with Disabilities Act and the Fourteenth Amendment. (Am. Compl. at 7-8).

However, Plaintiff makes no mention of either of these assertions in his statement of the case in the Joint Pretrial Statement, (see Doc. 41 at 3-6), though the utility bill issue is mentioned, albeit minimally, in the parties' summary judgment filings. Local Rule 3.06(e) provides that "[a]ll pleadings filed by any party prior to filing of the pretrial statement shall be deemed to be merged therein." M.D. Fla. Local Rule 3.06(e). Accordingly, these assertions are no longer properly before the Court. In any event, the ultimate ruling in this Order is applicable to these other assertions as well. Moreover, with regard to the second of these averments, Plaintiff has not alleged that he is blind or otherwise disabled, and as evidenced by the record herein, he possesses a driver's license.

[7]Plaintiff explains in the Amended Complaint that Defendants Lynum and Cowles are sued solely as "parties interested in the outcome" of this case and that no relief is being sought against them in this action. (Doc. 25 ¶¶ 10-11).

inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

### III. Discussion

Defendants make several arguments for summary judgment in their favor, but one threshold issue—Plaintiff's lack of standing—is dispositive of this case. "Article III, § 2 of the Constitution extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies.'" Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998). "Standing to sue is part of the common understanding of what it takes to make a justiciable case," and "[t]he 'irreducible constitutional minimum of standing' contains three requirements." Id. at 102-03 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). These three requirements are:

> (1) injury in fact, [which means] an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct, [which means] that the injury fairly can be traced to the challenged action of the defendant, and has not resulted from the independent action of some third party not before the court; and (3) a likelihood that the injury will be redressed by a favorable decision, [which means] that the prospect of obtaining relief from the injury as a result of a favorable ruling is not too speculative.

Ne. Fla. Chapter of Associated Gen. Contractors v. City of Jacksonville, 508 U.S. 656, 663 (1993) (citations and internal quotations omitted).

"The party invoking federal jurisdiction bears the burden of establishing" the three elements of standing. Lujan, 504 U.S. at 561. "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be

supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Id. (emphasis removed).  Thus, while allegations of standing are sufficient at the pleading stage, "[i]n response to a summary judgment motion . . . the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." Id. (quoting Fed. R. Civ. P. 56(e)) (internal citation omitted).

Defendants argue that Plaintiff lacks standing to challenge the alleged home ownership requirement in Section 1-1(d) of the City Charter because he has not presented evidence that he was a resident of the City of Orlando or District 5 thereof during the period January 15, 2009-January 15, 2010.  The Court agrees.

As correctly noted by Defendants, Plaintiff did allege in the Amended Complaint that he is a resident of the City of Orlando.  (Doc. 25 ¶ 6).  Although such an allegation is sufficient with regard to standing at the pleading stage, as noted in Lujan a plaintiff must support each element of standing "with the manner and degree of evidence required" at each particular phase of the litigation.  504 U.S. at 561.  This case is no longer at the pleading stage but instead is before the Court on the parties' cross-motions for summary judgment.

Defendants have presented abundant evidence that Plaintiff lives not at 825 W. Washington Street or anywhere else within the City of Orlando or District 5 thereof but at a home that he owns in unincorporated Orange County.  This evidence includes the affidavit of a fraud investigator for the Orlando Utilities Commission who reviewed the utility usage at the property located at 825 W. Washington Street for which Plaintiff presented leases.

(Frank Scaletta Aff., Ex. 4 to Doc. 34). The investigator determined that although a structure of the size of that property would typically require electrical usage of 600 to 1200 kilowatt hours **per month** and water usage of 1000 to 4000 gallons **per month**, for the **four-month period** from January 24, 2009 through May 21, 2009 the total utility usage was approximately 225 kilowatt hours and fewer than 1000 gallons of water were used. (Scaletta Aff. ¶ 5). Similarly, fewer than 1000 gallons were used during the five-month period from August 21, 2009 through January 22, 2010. (Id.).

Additionally, Defendants note that during discovery Plaintiff did not, in response to requests for production, produce any documents reflecting residence at 825 W. Washington Street or anywhere else within the City of Orlando. (See Brenner Aff. ¶ 24). Instead, documents that Plaintiff produced reflected either a P.O. Box or the address of the house that Plaintiff owns on Tufts Court in unincorporated Orange County. Plaintiff did not produce any documents responsive to a request for evidence that he ever paid any rent on the 825 W. Washington Street property for which he had presented leases between himself and the mother of his campaign treasurer when he attempted to qualify for the March 2010 election. (See id. ¶ 24(f)). Defendants also have presented abundant evidence that Plaintiff actually resides at the Tufts Court address, including employment records and court filings pertaining to Plaintiff's divorce and another domestic legal matter. (See id. ¶ 26 & Attachs. to Brenner Aff.).

In the face of Defendants' argument and evidence, Plaintiff has presented neither

-10-

argument nor evidence that he lives or has lived within the City of Orlando.[8] Instead, Plaintiff argues that Defendants' factual[9] standing argument "is based on the false premise that a person can only have one residence," (Doc. 44 at 13), and he contends that he "could have two residences, one in the unincorporated county and one in District 5," which "does not automatically mean he has no standing to run for office in the City of Orlando or to seek declaratory relief enabling him to run again in the future," (id. at 14).

However, Plaintiff's assertions are not sufficient to meet his summary judgment burden with regard to standing. He may not circumvent the requirement that he have a stake in the controversy at hand by merely arguing hypotheticals about the possibility of

---

[8] Of course, in assessing the evidence (or lack thereof) regarding Plaintiff's residence within the City in determining the issue of standing, this Court is **not** sitting in review of the City Clerk's evaluation of the proof regarding residency that Plaintiff presented at the time he attempted to qualify as a candidate for the city commission. Instead, the Court is assessing the evidence that Plaintiff has presented or not presented to this Court in this lawsuit.

[9] Plaintiff also argues that Defendants' standing argument is incorrectly premised on Defendants' belief that Plaintiff is not challenging Section 1-1(b) but only Section 1-1(d). Plaintiff asserts that Section 1-1(b), which contains the "bona fide resident" requirement, is "inextricably tied" to Section 1-1(d) and that the two sections stand or fall together. This argument tends to go to the merits of Plaintiff's constitutional challenge and does not establish standing.

Even where only a facial challenge is brought to a provision, a plaintiff must have a stake in the outcome of the alleged controversy; otherwise, the case is nothing more than an abstract dispute. To the extent Plaintiff attempts to argue the merits of the case in response to Defendants' argument as to his lack of standing, Plaintiff's attempt fails. Regardless of the terminology used in Section 1-1 and regardless of what type of evidence Section 1-1 allegedly "requires" candidates to present in order to qualify to run in an election, Plaintiff was required to present some evidence of his standing to bring this lawsuit challenging Section1-1 in the first instance. He has not done so; he has not come forth with any evidence—in the form of attestation as to his residence or otherwise—establishing standing.

having two residences—one within the City and one without.  In the face of the evidence presented by Defendants negating the allegation of residence that Plaintiff made in his Amended Complaint, Plaintiff was obligated to come forth with evidence of residence within the City; he has not done so.  Even assuming arguendo that a person can have two residences—one within the City and one outside it—and still be a "resident," Plaintiff has not presented evidence of a residence within the City.  In an affidavit (Doc. 37), Plaintiff attests to being a registered and qualified elector, but he stops short of making a sworn statement that he resides or has ever resided in the City.

In an equal protection case such as this one, a person who does not belong to the allegedly disfavored class or group does not have a sufficient interest to establish the requisite standing to challenge the allegedly unconstitutional provision.  Assuming arguendo that, as alleged by Plaintiff, Section 1-1 impermissibly requires City commission candidates to be City residents who are homeowners, the disfavored class consists of City residents who do not own a home.  Plaintiff has not met his burden of showing that he is such a person because he has not presented evidence that he is or was a City resident—and therefore he has not established standing to bring a facial challenge to Section 1-1.  See, e.g., Rosario v. Rockefeller, 410 U.S. 752, 759 n.9 (1973) (finding that petitioners lacked standing to challenge constitutionality of durational residence requirements where petitioners made "no claim that they are recently arrived residents," noting that "petitioners cannot represent a class to which they do not belong")[10]; accord Wirth v. Ehly, 287 N.W.2d 140, 148 (Wis. 1980)

---

[10]In the instant case, Plaintiff does not challenge the constitutionality of the one-year residence requirement of Section 1-1.  Indeed, durational residence requirements for

("A person does not have standing to challenge a statute on constitutional grounds upon a point not affecting his rights. Nor can one challenge the unequal protection afforded to members of a class unless he is a member of that class."), superseded by statute on other grounds as noted in Wilson v. Waukesha County, 460 N.W.2d 830, 833-34 (Wis. Ct. App. 1990).

Stated differently, in the absence of evidence of residence within the City or District 5 there is no causal connection between Section 1-1's alleged freeholder requirement and Plaintiff's inability to run for District 5 City Commissioner. Plaintiff has not presented evidence establishing that he is or was at any time a resident of District 5, and thus he has not shown that he could have been qualified to run for District 5 City Commissioner even if he is correct on the "freeholder" issue. See Muntaqim v. Coombe, 449 F.3d 371, 376 (2d Cir. 2006) (finding lack of standing and noting lack of causal connection between New York election law and Plaintiff's inability to vote where his inability to vote in New York arose "from the fact that he was a resident of California" rather than from fact that "he was a convicted felon subject to the application" of the law he sought to challenge, and plaintiff "suffered no 'invasion of a legally protected interest'" (quoting Lujan, 504 U.S. at 560)).

Because Plaintiff has not established standing to bring this suit, the Court need not and cannot reach the merits of the case.

---

candidates have been upheld by courts. See, e.g., Woodward v. City of Deerfield Beach, 538 F.2d 1081 (5th Cir. 1976); Daves v. City of Longwood, 432 F. Supp. 503, 506 (M.D. Fla. 1976) (noting that "[t]he imposition of a reasonable residency requirement as a qualification for candidacy to a significant office does not interfere with fundamental rights" and upholding one-year residency requirement).

IV.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  The Motion for Summary Final Judgment of Defendants Alana Brenner and City of Orlando (Doc. 34) is **GRANTED** based on Plaintiff's lack of standing.  Due to this ruling, the Court does not reach the other arguments raised in Defendant's motion or in Plaintiff's Dispositive Motion for Summary Judgment (Doc. 36), which is hereby **DENIED as moot**.

2.  The Clerk is directed to enter a judgment in favor of all of the Defendants and thereafter to close this file.

**DONE** and **ORDERED** in Orlando, Florida this 4th day of March, 2011.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record