# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**VIBERT L. WHITE, JR.,**

        **Plaintiff,**

**-vs-**                                      **Case No.  6:10-cv-134-Orl-28GJK**

**ALANA BRENNER, BILL COWLES, DAISY
W. LYNUM, and CITY OF ORLANDO,**

        **Defendants,**

_____

# REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT:

    This cause came on for consideration without oral argument on the following motions:

| | |
|---|---|
| **MOTION:** | **MOTION FOR ATTORNEYS' FEES AND COSTS OF CITY OF ORLANDO AND ALANA BRENNER AND RENEWED REQUEST FOR SANCTIONS (Doc. No. 53)** |
| **FILED:** | **March 21, 2011** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

| | |
|---|---|
| **MOTION:** | **MOTION FOR ATTORNEYS' FEES AND COSTS OF BILL COWLES (Doc. No. 56)** |
| **FILED:** | **March 21, 2011** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part.**

## I.     BACKGROUND.

On June 29, 2010, Vibert L. White, Jr. ("White") filed an amended complaint (the "Complaint") against Alana Brenner ("Brenner"), in her official capacity as the City Clerk for the City of Orlando, Florida, Bill Cowles ("Cowles"), in his official capacity as Supervisor of Elections for Orange County, Florida, Daisy W. Lynum ("Lynum"), as an interested party, and the City of Orlando ("Orlando") (collectively, the "Defendants").   Doc. No. 25.[1]   In the Complaint, White alleges that he is "a resident of the City of Orlando."   Doc. No. 25 at ¶ 6. White alleges that he attempted to run for the office of City Commissioner for District 5 of the City of Orlando in the March 9, 2010 municipal election, but Brenner refused to qualify him as a candidate.   Doc. No. 56 at ¶ 26.   White contends that the candidacy requirements cited by Brenner as the basis for White's nonqualification are unconstitutional.   Doc. No. 56 at ¶ 29. White requests that the allegedly unconstitutional conditions be stricken and that the Court "mandatorily enjoin Brenner and [Orlando] to qualify [White] as a candidate for the position of District 5 City Commissioner and to further order Brenner and [Orlando] to instruct Cowles to

---

[1] White's original complaint (Doc. No. 1) was dismissed without prejudice for failure to join a necessary party – the City of Orlando.  Doc. No. 24.

place [White's] name and the name of Lynum on the November 2, 2010 general election ballot (or on a ballot for a special election called for this purpose). . . ."  Doc. No. 56 at 8-9.

On July 7, 2010, Cowles filed an Answer admitting that as of the date of the Complaint, "and based on the latest voter registration information received by Cowles, [White] is . . . a resident of the City of Orlando."  Doc. No. 26 at ¶ 6.  On July 8, 2010, Brenner filed an Answer and Affirmative Defenses.  Doc. No. 27.  On September 28, 2010, Brenner filed a Motion for Sanctions Under Federal Rule of Civil Procedure 11 (the "Motion for Rule 11 Sanctions").  Doc. No. 31.  In the Motion for Rule 11 Sanctions, Brenner alleges that Rule 11 sanctions, including attorneys' fees and costs against White and White's counsel, are warranted for the following reasons:

> [A] reasonable inquiry into the facts alleged in [White's] Complaint would have disclosed that:
>
> A.   [White] was not a bona-fide resident of District 5 of the City of Orlando for more than one year prior to January 15, 2010, as alleged in Paragraph 22(b) of White's Complaint;
>
> B.   [White] was not a registered and qualified elector of District 5 of the City of Orlando for the one-year period prior to qualifying as required by Chapter 2, Subsection 1-1 (D) of the City of Orlando Charter;
>
> C.   [White] failed to provide [Brenner] with satisfactory proof that he met the requirements of Chapter 2, Subsection 1-1 of the Charter of the City of Orlando; and
>
> D.   [White's] claim that [ ] Brenner should be mandatorily enjoined to qualify [White] as a candidate for the position of District 5, City Commissioner, is not warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Doc. No. 31 at 1-2.  Thus, Brenner alleges that if White and White's attorney had conducted a reasonable inquiry prior to filing the Complaint, they would have discovered that the claim is not supported by the facts or existing law. *Id*.

On December 15, 2010, the undersigned entered a Report and Recommendation, recommending that the Motion for Rule 11 Sanctions be denied because it: 1) contains only unsupported conclusory allegations; 2) fails to contain a memorandum of legal authority as required by Local Rule 3.01(a); and 3) fails to "address the threshold issue of whether Brenner complied with the safe harbor requirement of Rule 11."  Doc. No. 42 at 7.  On January 10, 2011, the Court entered an order adopting and confirming the Report and Recommendation, and denying the Motion for Rule 11 Sanctions.  Doc. No. 48.

On March 4, 2011, the Court entered an order (the "Order") denying White's motion for summary judgment (Doc. No. 36) and granting Brenner and Orlando's motion for summary judgment (Doc. No. 34).  Doc. No. 52.  In the Order, the Court found that White lacks standing to challenge the constitutionality of Orlando's election qualification requirements because White failed to come forth with evidence showing "that he lives or has ever lived within the City of Orlando."  Doc. No. 51 at 8-13.  The Court stated:

> As correctly noted by [Brenner and Orlando], [White] did allege in the [Complaint] that he is a resident of [Orlando].  Although such an allegation is sufficient with regard to standing at the pleading stage, as noted in *Lujan* [*v. Defendants of Wildlife*, 504 U.S. 555, 561 (1992)] a plaintiff must support each element of standing "with the manner and degree of evidence required" at each particular phase of the litigation.  504 U.S. at 561.  This case is no longer at the pleading stage but instead is before the Court on the parties' cross-motions for summary judgment.

4

[Brenner and Orlando] have presented abundant evidence that [White] lives not at 825 W. Washington Street or anywhere else within the City of Orlando or District 5 thereof but at a home that he owns in unincorporated Orange County. This evidence includes the affidavit of a fraud investigator for the Orlando Utilities Commission who reviewed the utility usage at the property located at 825 W. Washington Street for which [White] presented leases. The investigator determined that although a structure of the size of that property would typically require electrical usage of 600 to 1200 kilowatt hours **per month** and water usage of 1000 to 4000 gallons **per month**, for the **four-month period** from January 24, 2009 through May 21, 2009 the total utility usage was approximately 225 kilowatt hours and fewer than 1000 gallons of water were used. Similarly, fewer than 1000 gallons were used during the five-month period from August 21, 2009 through January 22, 2010.

Additionally, [Brenner and Orlando] note that during discovery [White] did not, in response to requests for production, produce any documents reflecting residence at 825 W. Washington Street or anywhere else within the City of Orlando. Instead, documents that [White] produced reflect either a P.O. Box or the address of the house that [White] owns on Tufts Court in unincorporated Orange County. [White] did not produce any documents responsive to a request for evidence that he ever paid any rent on the 825 W. Washington Street property for which he had presented leases between himself and the mother of his campaign treasurer when he attempted to qualify for the March 2010 election. [Brenner and Orlando] also have presented abundant evidence that [White] actually resides at the Tufts Court address, including employment records and court filings pertaining to [White's] divorce and another domestic legal matter. . . .   In the face of [Brenner and Orlando's] argument and evidence, [White] has presented neither argument nor evidence that he lives or has ever lived within the City of Orlando. . . .

Doc. No. 51 at 9-11 (emphasis in original) (citations omitted). In the Order, the Court noted that:

"[I]n assessing the evidence (or lack thereof) regarding [White's] residence within the City in

determining the issue of standing, this <u>Court is not sitting in review of the City Clerk's</u>

<u>evaluation of the proof regarding residency that [White] presented at the time he attempted to</u>

5

qualify as a candidate for the city commission.  Instead, the Court is assessing the evidence that [White] has presented or not presented to this Court in this lawsuit."  Doc. No. 51 at n. 11 (emphasis added).  Thus, the Court did not rule on the sufficiency of the evidence presented by White to Brenner regarding his proof of residency, but instead ruled on the evidence, or lack thereof, submitted by White before this Court. *Id*.  Because White failed to present evidence to the Court demonstrating that he is or was an Orlando resident, the Court found that White lacked a sufficient interest to challenge the constitutionality of Orlando's City Charter.  Doc. No. 51 at 12.  Thus, the Court granted Brenner and Orlando's motion for summary judgment and closed the case.  Doc. No. 51 at 13-14.

## II.     **MOVANTS' MOTION.** [2]

A. Inherent Authority.

On March 21, 2011, Brenner and Orlando (the "Movants") filed a Motion for Attorneys' Fees and Costs and Renewed Request for Sanctions (the "Movants' Motion").  Doc. No. 53.  Movants argue that they are entitled to attorneys' fees based on the Court's inherent authority.  Doc. No. 53 at 4.  Movants also renew their request for sanctions under Rule 11.  *Id*.  Movants maintain that White, and his counsel, acted in bad faith by filing a complaint alleging that White is a resident of Orlando.   Movants state:

> The issue of where White resided was central to this litigation. This is not a situation where a plaintiff was "mistaken" about a fact.  White clearly was aware that he had not been a resident of District 5 for the required one-year period (01/16/2009 – 1/15/2010).  During that year, he repeatedly represented to third parties that he resided at his home on Tufts Court in unincorporated Orange County.

---

[2] For ease of discussion, when addressing Brenner and Orlando's Motion the Court will refer to them as the "Movants."

Doc. No. 53 at 5.  In support, Movants state:

- On February 28, 2009, White represented to his employer . . . that his "home address" was . . . located in unincorporated Orange County.  Doc. No. 34-3 at ¶ 22.

- Throughout the entire 2009 calendar year White represented to the Florida Motor Vehicles Department [sic] that his residential address was [in unincorporated Orange County].  Doc. No. 34-3 at ¶¶ 11, 13(c).

- On September 9, 2009, in [a state court action], White represented to that Court that he was located [in unincorporated Orange County].  Doc. No. 34-3 at ¶ 23(a).

- On December 23, 2009, when the Orange County Sheriff's Office investigated an incident at White's home, he gave his "home address" [in unincorporated Orange County].  Doc. No. 34-3 at ¶ 13(c).

- On December 23, 2009, less than 30 days prior to attempting to qualify for District 5 Commissioner, in filing a Petition for Injunction in *White v. Simms*, Case No. 2009-DR-019502-O, Ninth Judicial Circuit for Orange County, Florida, White represented under oath [that he lives in unincorporated Orange County].  Doc. No. 34-3 at ¶ 23(b).[3]

- The utility bills for White's purported residence in District 5 (825 West Washington Street) reflected utility usage which was too low to be consistent with a residential use of the property.  Doc. Nos. 34-3 at ¶ 12(b); 34-8 at ¶¶ 5-7.

Doc. No. 53 at 6.[4]  Based on these representations, Movants maintain that White's statement in the Complaint, that he is a resident of Orlando, is false.  Doc. No. 53.  Movants allege that White has needlessly wasted resources, including the costs of retaining attorneys to defend this action, by continuing the litigation.  Doc. No. 53 at 7.  Movants state that although the Court's inherent

---

[3] Movants' Motion incorrectly cites to Doc. No. 34-3 at ¶ 24(b), but that appears to be a typographical error.
[4] Movants rely on the affidavits of Brenner (Doc. No. 34-3) and Frank Scaletta (Doc. No. 34-8), a fraud investigator with the Orlando Utilities Commission, who reviewed utility bills for the 825 West Washington Street address.

7

power to award attorneys' fees should be exercised with restraint and discretion, "where a plaintiff knowingly misrepresents in his pleadings the facts related to one of the central issues in the litigation (here, a fact which was the very basis of his claim), the Court should exercise its discretion and award attorneys' fees."  Doc. No. 53 at 7.

B.  Rule 11.

Movants also seek to renew the Motion for Rule 11 Sanctions (Doc. No. 31).  Doc. No. 53 at 7-12.  Movants suggest that because the Motion for Rule 11 Sanctions was not specifically denied "with prejudice," they may renew the motion.  Doc. No. 53 at 8-9 (citing *Marin v. Alvarez, Armas, and Borron, P.A.*, 2010 WL 338839 (S.D. Fla. 2010)).  Movants maintain that they have complied with the safe harbor provisions of Rule 11 by: discussing the issue of sanctions with White's counsel on March 8, 2010; serving the Motion for Rule 11 Sanctions (Doc. No. 31) on White on April 14, 2010; and waiting to file the Motion for Rule 11 Sanctions (Doc. No. 31) until September 28, 2010. Doc. No. 53 at 9.  Movants do not state whether they complied with Rule 11's safe harbor provisions before filing the instant motion.

Movants maintain that if White and White's counsel had conducted a reasonable inquiry into the facts alleged in the Complaint before filing suit, they would have discovered that: White was not a bona fide resident of District 5 of the City of Orlando for more than one year prior to January 15, 2010; White was not a registered and qualified elector of District 5 for more than one year prior to qualifying; White failed to provide Brenner with satisfactory proof that White met the requirements under the City Charter of Orlando; and that White's request that Brenner should be mandatorily enjoined to qualify White as a candidate was not warranted by existing law, or by a non-frivolous argument for modifying or reversing existing law.  Doc. No. 53 at 10.  Movants

maintains that the undisputed facts show that White was not a resident of Orlando for more than one year prior to January 15, 2010, and this Court specifically found that White "'has not presented evidence establishing that he is or was at any time a resident of District 5, and thus he has not shown that he could have been qualified to run for District 5. . . .'"  Doc. No. 53 at 10 (quoting Doc. No. 51 at 13).   Movants argue that White's claim was objectively frivolous because he knew he had not been a resident of Orlando for the previous year.  Doc. No. 53 at 11.  Thus, Movants request Rule 11 sanctions, in the form of attorneys' fees and costs, against White and, "if the Court determines that White's attorney did not perform a reasonable inquiry, then also against White's attorney."  Doc. No. 53 at 12.

C.   Attorneys' Fees and Costs.

Movants request $36,713.50 in attorneys' fees and $335.50 in costs.  Doc. No. 53 at 12.  In support of Movants' request, they attach the declaration of their lead counsel, W. Scott Gabrielson, Esq. (Doc. No. 54 at 1-6) and a detailed time sheet showing the attorney who preformed each task, the time incurred, and the hourly rate for each attorney performing the task.  Doc. No. 54-1 at 1-6.  Movants also attach receipts showing $335.50 in costs for Movants' portion of the mediator's fee.  Doc. No. 54-2.

D.   White's Response.

On April 4, 2011, White filed a response to Movants' Motion arguing that Movants failed to present any evidence of bad faith, and that White did present evidence which, although it was ultimately rejected by the Court on summary judgment, supported his claim that he was a resident of Orlando.  Doc. No. 58 at 13-14.  More specifically, White asserts that the two leases from the 825 West Washington Street address and the utility bills, which showed some, albeit

slight, usage, are evidence of White's <u>intent to become a permanent resident of Orlando</u> and that White's statement in the Complaint that he is a resident of Orlando was not made in bad faith. *Id.* at 3-4, 9-10, 13-14.   Thus, White maintains that the Court should decline to exercise its inherent power to award attorneys' fees.

Regarding Movants' request to renew the Motion for Rule 11 Sanctions, White maintains that Movants' Motion should be denied because: Movants failed to comply with the safe harbor provisions of Rule 11 before filing Movants' Motion (Doc. No. 58 at 5-60); the case relied upon by Movants to renew the Motion for Rule 11 Sanctions, *Marin v. Alvarez, Armas & Borron, P.A.*, 2010 WL 338839 (S.D. Fla. 2010), is factually distinguishable from this case because there the Court specifically permitted the defendants to renew the motion for Rule 11 sanctions (Doc. No. 58 at 6-9); the renewed request for Rule 11 sanctions should be denied because the Court's prior order denying that motion merged into the final judgment, which procedurally bars Movants from renewing it (Doc. No. 58 at 4 n. 3, 5, 8-9); and White presented some evidence to support his claim of residency in Orlando, but the Court "chose to agree with [Movants]."  Doc. No. 58 at 10-12.   White also requests that the Court award him fees pursuant to Rule 11(c)(2), Federal Rules of Civil Procedure for defending against a second Rule 11 motion.  Doc. No. 58 at 15.   White does not address the amount of attorneys' fees and costs Movants request, including the hourly rates or the time expended on each task.  Doc. No. 58.

## III.   <u>COWLES'S MOTION</u>.

On March 21, 2011, Cowles filed a Motion for Attorneys' Fees and Costs ("Cowles's Motion").  Doc. No. 56.  Cowles requests an award of attorneys' fees and costs against White

and his counsel pursuant to the Court's inherent power.  Doc. No. 56 at 1.[5]  Cowles states the

following:

> White attacked the constitutionality of Chapter 2, Section 1-1 of
> [Orlando's] Charter, falsely claiming that he had been a resident of
> District 5 of the City of Orlando for more than one year prior to
> January 15, 2010, but was prohibited from running for District
> Commissioner because he did not own a homestead in [Orlando].
> In truth, White knew that he had not been a resident of District 5
> for that one-year period and had not been a resident of the City at
> any relevant time.  White's counsel was put on notice of the falsity
> of these allegations by Brenner's service of the [Motion for Rule
> 11 Sanctions].  Despite being advised that White did not reside in
> District 5, White's counsel continued to prosecute the claims.

Doc. No. 56 at 4.    Thus, Cowles maintains that White and his counsel continued the litigation

despite knowing that White's claim of residence in Orlando was false.  *Id*.  In support of White's

knowledge of the falsity of his claim, Cowles cites the same evidence listed above.  *See* supra pp.

6-7.    Furthermore, Cowles contends that after being presented with a challenge to White's claim

of residency at the summary judgment stage, White and his counsel "presented no evidence or

argument to support the representation that he lives or has lived in the City of Orlando."  Doc.

No. 56 at 5.  Cowles maintains that White and his counsel needlessly continued the litigation in

bad faith causing Cowles to expend resources on attorneys to defend the matter.  Doc. No. 56 at

5.  Thus, Cowles requests that the Court exercise its inherent power and award Cowles attorneys'

fees and costs.  Doc. No. 56 at 6.  Cowles states that he has incurred $4,625.50 in attorneys' fees

and $307.55 in costs, but he does not attach any affidavits or time sheets supporting the amount

of attorneys' fees and costs claimed.  *Id*.

---

[5] Cowles is not requesting sanctions pursuant to Rule 11, Federal Rules of Civil Procedure.  Doc. No. 56 at 1.

On April 4, 2011, White filed a response to Cowles's Motion, which is largely identical to White's response to Movants' Motion.  Doc. No. 59

## IV.   <u>ANALYSIS.</u>

A.  Inherent Power.

The Court has the inherent authority to control the proceedings before it, which includes the authority to impose "reasonable and appropriate" sanctions.  *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002).  "<u>To exercise its inherent power a court must find that the party acted in bad faith.</u>"  *Martin*, 307 F.3d at 1335 (emphasis added).  "Inherent powers must be exercised with restraint and discretion."  *Footman v. Cheung*, 341 F.Supp.2d 1218, 1224 (M.D. Fla. 2004) (citing *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)).  Thus, a movant must show that a party and/or an attorney pursued objectively untenable factual or legal positions by acting in bad faith, vexatiously, wantonly, or for oppressive reasons.  *See Martin*, 307 F.3d at 1335.

1.  White.

In this case, the Complaint states that White is "a resident of the City of Orlando."  Doc. No. 25 at ¶ 6.  However, White never produced any evidence to this Court demonstrating that he is, or ever was, a resident of Orlando, including the lease agreements for the 825 W. Washington Street address.  *See* Doc. No. 51 at 10-11.  The evidence clearly shows that White is a resident of unincorporated Orange County.  *See* Doc. Nos. 34-3, 34-8.  As the Court noted in its order granting summary judgment in favor of the Defendants, White "stops short of making a sworn statement that he resides or has ever resided in [Orlando]."  Doc. No. 51 at 12.  Similarly in response to the present motions, White fails to definitively allege in a sworn statement that he

was a resident of Orlando. *See* Doc. Nos. 58, 59. Rather, White maintains that the leases from the 825 West Washington Street address, which are not part of this record, and the utility bills showing some usage there, <u>are evidence of his intent</u> to become a permanent resident of Orlando. Doc. No. 58 at 3-4, 9-10, 13-14.

Based on this record, the Court finds that the allegation of residency in the Complaint was demonstrably false. White offered no documents or testimony in this case supporting the false allegation of residency. Instead, White retreated to a statement that he "intended" to become a resident. That statement itself reveals and confirms the falsity of his original allegation. Thus, it is recommended that the Court find White was aware that he was not a resident of Orlando at the time the Complaint was filed and throughout the course of the litigation, a fact which was obviously contradicted by the allegation of residency in the Complaint and which was critical to maintaining the suit. While the Court is mindful that inherent powers are to be exercised "with great caution" and in rare instances, it is recommended that this is one of those rare cases. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal quotation omitted). Thus, White's allegation of residency was made wantonly, vexatiously and in bad faith. Accordingly, it is recommended that, based on this record, the Court **GRANT** Movants' Motion (Doc. No. 53) and Cowles's Motion (Doc. No. 56) to the extent they request an award of attorneys' fees and costs, pursuant to the Court's inherent powers, against White.

2. White's Counsel.

While it is clear that White knew at the time the Complaint was filed that he was not a resident of the City of Orlando, Movants and Cowles have made no showing that White's

13

counsel was also aware that the allegation of residency was false at the time the Complaint was filed. Indeed, Cowles himself admitted White's allegations in the original complaint and amended complaint that he was a resident of Orlando, which admission was based on the documents White submitted with his voter registration. Doc. Nos. 10 at ¶ 6; 26 at ¶ 6. Nothing in the record suggests White's counsel should have known otherwise when the original or amended complaint were filed.

Although it may be argued that at some point in time after filing the original and amended complaint, White's counsel should have known that his client's allegation of residency was false, Movants and Cowles have made no showing or arguments about when that occurred. Movants and Cowles acknowledge that bad faith is a prerequisite to an award of fees based on the Court's inherent authority, but rather than showing how or when White's counsel specifically acted in bad faith Movants and Cowles simply request a joint and several award of attorneys' fees against White and White's counsel. They also fail to address the date from which attorneys' fees should be assessed against White's counsel. Thus, the Court is left to speculate as to the acts of bad faith on the part of White's counsel, when they occurred, and the proper quantification of fees against him. Based on this record, it is recommended that the Court decline to exercise its inherent authority to award sanctions against White's counsel. Accordingly, it is recommended that the Court **DENY** Movants' Motion (Doc. No. 53) and Cowles's Motion (Doc. No. 56) as to White's counsel.

B.   Rule 11.

Rule 11, Federal Rules of Civil Procedure, embodies the principle that attorneys and pro se litigants have an obligation to the court to refrain from conduct that frustrates the aims of Rule

14

1.[6]  To accomplish this goal, Rule 11 requires litigants to reasonably inquire into the law and facts before making legal and factual contentions in a pleading or motion; it emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention.  *See* Advisory Committee Notes to Rule 11, 1993 Amendments.[7]

   Rule 11 sanctions may be sought by motion of an opposing party or by the Court on its own initiative. Fed.R.Civ.P. 11(c)(2)-(3).  Rule 11 contains a safe harbor provision which must be complied with prior to a party filing a motion for Rule 11 sanctions.  *See* Fed.R.Civ.P. 11(c)(2).  The safe harbor provision requires a party to formally serve the offending party with a copy of the proposed motion for sanctions at least twenty-one (21) days prior to filing the motion for sanctions with the court. Fed.R.Civ.P. 11(c)(2).  The purpose of the safe harbor provision is to allow the party against whom sanctions are sought to withdraw the challenged document(s). *See* 5A *Wright & Miller*, Federal Practice and Procedure, § 1337.2 (2010).  "If corrective action is taken, the question of sanctions becomes moot."  *Id*.  After the expiration of twenty-one (21) days, if corrective action is not taken, the party seeking sanctions may file the motion.  *See* Fed.R.Civ.P. 11(c)(2). The safe harbor provision assumes that the case involving the party or attorney who made the offending pleading is still ongoing so that the offending party may take corrective action.  *Accord Peer v. Lewis*, 606 F.3d 1306, 1315 (11th Cir. 2010) (holding that

---

[6] Rule 1, Federal Rules of Civil Procedure, provides that the rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action."  *Id*.
[7] Rule 11 does not apply to discovery.  *See* Fed.R.Civ.P. 11(d) (2010).

Rule 11 does not apply where offending attorney withdraws prior to party obtaining evidence of violation because offending party may no longer take corrective action).

In this case, Movants' Motion requests that the Court allow them to renew the prior Motion for Rule 11 Sanctions (Doc. No. 31). Movants' Motion is not identical to the prior Motion for Rule 11 Sanctions (Doc. No. 31) because Movants' Motion contains additional facts, arguments, and a memorandum of law. *Compare* Doc. No. 31 *with* Doc. No. 53 at 7-12. Thus, the Court construes Movants' Motion (Doc. No. 53 at 7-12) as a distinct motion.

Movants' Motion fails to address the threshold issue of whether Movants complied with the safe harbor requirement of Rule 11 prior to filing the instant motion. Doc. No. 53.[8] Thus, the Court finds that Rule 11 sanctions are not appropriate because Movants failed to comply with the safe harbor requirements. Accordingly, it is recommended that the Court **DENY** the Movants' Motion (Doc. No. 53) to the extent it requests Rule 11 sanctions.

C.  Amount of Fees and Costs.

As set forth above, White failed to address the amount of attorneys' fees and costs requested in Movants' Motion or Cowles's Motion. Thus, as to the amount of attorneys' fees and costs requested, the motions are unopposed.

1.  Movants.

Lead counsel for Movants, W. Scott Gabrielson, Esq., attached an affidavit and detailed time showing the individual who performed each tack, the amount of time expended, and the hourly rate for the individual (Doc. Nos. 54 at 1-7; 54-1 at 1-6), which are reflected in the table below:

---

[8] Movants' Motion does state that Movants complied with the safe harbor provision of Rule 11 prior to filing the Motion for Rule 11 Sanctions, but it does not address the instant motion. Doc. No. 53 at 9-10.

| Attorney | Rate | Time | Total |
|---|---|---|---|
| W. Scott Gabrielson | $275.00 | 126.7 | $34,842.50 |
| Chad K. Alvaro | $235.00 | 1.8 | $423.00 |
| James J. Henson | $140.00 | .8 | $112.00 |
| John D. Hanebrink | $250.00 | 2.9 | $725.00 |
| John D. Hanebrink | $235.00 | <u>2.6</u> | <u>$611.00</u> |
| **TOTALS** | | **134.8** | **$36,713.50** |

*Id.*[9]   The Court has reviewed the time expended and the hourly rates requested for each individual and, in light of White's failure to object to either, finds that the hours expended and hourly rates requested are reasonable.  *See Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (In determining a reasonable hourly rate, the "court . . . is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."). Thus, it is recommended that the Court award Movants $36,713.50 in attorneys' fees.

Movants have also attached costs totalling $335.00, which reflect the Movants' respective costs of mediation ($275.00) and copying ($60.50).  Doc. Nos. 54-2, 54-3.  Having reviewed the costs requested, and in the absence of any objection, it is recommended that the Court award Movants $335.00 in costs.

---

[9] A review of the time sheet for John D. Hanebrink, Esq. reveals that his hourly rate was increased to $250.00 per hour beginning approximately in January of 2011.  Doc. No. 54-1 at 6.

2.  Cowles.

Cowles's Motion fails to attach any affidavits or time sheets in support of amount of attorneys' fees and costs sought.  Accordingly, it is recommended that the Court direct the Cowles and White to meet and confer within fourteen (14) days from the date the Court rules on this report and recommendation in a good faith effort to resolve the amount of fees and costs requested by Cowles.  If the parties are unable to reach an agreement on the total amount of attorneys' fees and costs, within twenty-one (21) days Cowles may file an appropriate motion with supporting affidavits and time sheets.

## V.  **CONCLUSION.**

Based on the forgoing, it is recommended that the Court:

1.  **GRANT** Movants' Motion (Doc. No. 53) to the extent it requests an award of attorneys' fees and costs against White pursuant to the Court's  inherent authority and award Movants' $36,713.50 in attorneys' fees and $335.00 in costs against White;

2.  Otherwise **DENY** Movants' Motion (Doc. No. 53);

3.  **GRANT** Cowles's Motion (Doc. No. 56) to the extent it requests an award of attorneys' fees and costs against pursuant to the Court's inherent authority;

4.  Otherwise **DENY** Cowles's Motion (Doc. No. 56); and

5.  Direct Cowles and White to meet and confer in a good faith effort to agree on the total amount of attorneys' fees and costs within fourteen (14) days from the date the Court rules on this report and recommendation. If the parties are unable to reach an agreement, within twenty-one (21) days Cowles may file an appropriate motion with supporting affidavits and time sheets.

18

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Recommended** at Orlando, Florida on August 30, 2011.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:
Presiding District Judge
Counsel of record
Unrepresented parties

19